Dora V. Lane, Esq.
Nevada State Bar No. 8424
dlane@hollandhart.com
R. Calder Huntington, Esq.
Nevada State Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179

*Attorney for Defendant*
*Peri & Sons Farms, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM HERRON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PERI & SONS FARMS, INC., a domestic corporation,<br><br>Defendant. | CASE NO.: 3:13-cv-00075-HDM-VPC<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Peri & Sons Farms, Inc. ("Peri & Sons"), by and through its undersigned counsel of record, submits this Motion for Summary Judgment, seeking summary judgment on the claims for relief set forth in Plaintiff William Herron's ("Herron") Amended Complaint (the "Complaint") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

There are no issues of material fact left for trial on Herron's claim for disability discrimination or his failure to accommodate claim. First, Herron cannot demonstrate that he was a qualified individual with a disability. Second, Herron cannot show that he was terminated because of his alleged disability. Third, with respect to his failure to accommodate claim, Herron admits that he never requested an accommodation, and, therefore, he was never denied an accommodation. Fourth, Herron failed to exhaust his administrative remedies in

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1  connection with his failure to accommodate claim, negating this Court's subject matter

2  jurisdiction.  Peri & Sons is accordingly entitled to summary judgment and respectfully requests

3  that the Court enter summary judgment in its favor.

4  **II.**   **Procedural History**

5        On February 14, 2013, Herron filed this lawsuit against Peri & Sons, asserting disability

6  discrimination and failure to accommodate claims under the Americans with Disabilities Act

7  ("ADA").  Peri & Sons moved to dismiss Herron's complaint because it failed to state a claim

8  upon which relief could be granted.  This Court recognized the deficiencies in Herron's

9  complaint and granted him leave to amend.  (Dkt. #11, Order.)  On September 5, 2013, Herron

10  filed an amended complaint that, among other things, added an additional retaliation claim.

11  (Dkt. #12.)  Peri & Sons filed two separate motions to dismiss the Complaint—one for failure to

12  state a claim, and one for lack of subject matter jurisdiction because Herron failed to exhaust his

13  administrative remedies.  While the Court declined to grant Peri & Sons' motions at that stage,

14  *see* Dkt. #27, Order, the Court did dismiss Herron's retaliation claim because it was improperly

15  added to the Complaint after the Court only granted Herron leave to cure the deficiencies in his

16  original complaint.  The only claims now before the Court are Herron's claims for disability

17  discrimination and failure to accommodate, and the issue of whether Herron exhausted his

18  administrative remedies is ripe for adjudication.

19  **III.**   **Statement of Undisputed Facts**[1]

20      **A.**   **Brief Background on Peri & Sons**

21        Peri & Sons is a family-owned agricultural company headquartered in Mason Valley,

22  Lyon County, Nevada that farms approximately 8,000 acres in and around the City of

23  Yerington.  It grows conventional and organic onions, rotational crops such as alfalfa and

24  triticale, and organic leafy greens, such as baby spinach, romaine hearts, broccoli, cauliflower,

25  and spring mix.  **Exhibit 1,** Declaration of David Peri ("Peri Decl."), ¶ 2. Peri & Sons is one of

26

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

27    [1] Herron claims to be disabled within the meaning of the ADA because of a back problem.  While Peri & Sons

28  disputes Herron's claim that he is disabled, Peri & Sons will not address that aspect of Herron's ADA claims for purposes of this Motion.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

the largest private employers in Lyon County, and it actively supports non-profit organizations in the community such as the Boys & Girls Club.  In 2008, Peri & Sons became the first area recipient of the *From the Heart Award* from the Boys & Girls Clubs for the substantial support it has given to the Boys and Girls Club of Mason Valley, such as sponsoring fundraising events, funding scholarships, and contributing financially.  *Id.*, ¶ 3.

Due to the quality of its onions, Peri & Sons faces year-round demand and, accordingly, expanded its farming operations into California in 2007.  *Id.*, ¶ 4.  Peri & Sons' expansion into California, where the growing and harvest seasons are different than in Nevada, allows Peri & Sons to grow, pack, and ship onions from California from May through September.  Peri & Sons does the same from its Nevada farm from September through April.  *Id.*

**B.     Herron's Application to Peri & Sons**

Because of the size and scale of its farming operations, Peri & Sons maintains a large Maintenance Shop facility in Yerington that is staffed by several mechanics who repair and maintain the company's fleet of tractors and vehicles.  *Id.*, ¶ 5.

On December 5, 2011, Herron sent his resume to Peri & Sons to apply for a mechanic position.  **Exhibit 2**, Herron Resume.[2]  Robert "Bob" Giannotta, the then-Maintenance Shop Manager interviewed Herron, largely relying on the statements in Herron's resume to assess his qualifications.  **Exhibit 3**, Deposition of Robert Giannotta, 28:2-29:7; *see also* **Exhibit 4,** Declaration of Robert Giannotta ("Giannotta Decl."), ¶ 2.  However, much of the information in the resume Herron submitted to Peri & Sons was false.  *Compare* **Exhibit 5**, Deposition of William Herron, 139:3-14, 140:25-141:16, 144:13:-145:12 *with* Ex. 2, Herron Resume.  In fact, both Herron's stated qualifications and work history were materially false.

For example, while Herron represented in his resume that he had successfully received a Certificate of Completion from the Arizona Automotive Institute after a full year of study, Herron admitted at his deposition that he only attended the Institute for about four (4) months, never graduated, and did not obtain any certificate, let alone the Certificate of Completion

---

[2] This document was attached to Herron's deposition as Exhibit 9 and authenticated at pp. 137:15-138:24.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1    identified in his resume.  Ex. 5, Herron Depo., 139:3-14.  Further, although Herron claimed that

2    he held certificates for Engine Repair, Front-End Alignment, and Air-Conditioning from the

3    National Institute for Automotive Service Excellence ("ASE"), Ex. 2, Herron Resume, Herron

4    lacked an Air Conditioning certificate from ASE altogether, and his Engine Repair and Front-

5    End Alignment certificates had expired at the time he applied for the position at Peri & Sons.

6    **Exhibit 6**, Bill E. Herron ASE Certification;[3] **Exhibit 7**, ASE Records for Bill E. Herron

7    (including Certificate of Custodian of Records authenticating the documents); Ex. 5, Herron

8    Depo., 129:6-132:17.[4]  In addition, Herron intentionally excluded Hendricks Automotive, a

9    former employer, from his resume because he expected that the employer would give him a bad

10   reference.  Ex. 5, Herron Depo., 143:20-144:2.  To cover up the time he spent at Hendricks

11   Automotive, Herron misrepresented his time at Auto Pros, another place where he worked.  *Id.*

12   at 141:10-15; 144:13-145:1.

13          Herron also failed to disclose in his resume periods of time when he was unemployed,

14   including a period between May 2007 and July 2008 when he did not work for over a year.  To

15   conceal his period of unemployment, Herron provided incorrect dates of employment at various

16   places, creating the appearance that he was continuously employed.  Ex. 5, Herron Depo.,

17   141:5-16; 143:20-144:2.  In responding to a question about why he did not correctly reflect his

18   periods of unemployment, Herron stated: "Potential employers don't like to see there's a break

19   in employment," and admitted to "tailoring" his resume to misinform potential employers about

20   his employment history.  Ex. 5, Herron Depo., 145:2-12.  Further, Herron stated that he had

21   worked at G&O Auto Body Shop from May 1999 until August 2006, which created the

22

23   [3] As this document was produced by Herron, he cannot now dispute its authenticity.  *See, e.g., Grow v. Garcia*, 2010 WL 455118, *1 (D.Nev. 2010) ("Documents produced by a party during discovery are deemed authentic when offered by the party-opponent.") (citing to *Orr v. Bank of America,* 285 F.3d 764, 777 n. 20 (9th Cir. 2002)).

24   [4] Herron testified that he was ASE-certified in "air conditioning recovery" for which ASE does not "give you a certification or paper ...."  Ex. 5, Herron Depo., 12:20-13:3.  However, ASE does give a "Heating and Air Conditioning Certification."  *Compare* **Exhibit 8**, Dwayne Fugate ASE Certification (including certification for Heating and Air Conditioning) (authenticated by the Declaration of Dwayne Fugate enclosed with Ex. 8), *with* Ex.

25   6, Bill E. Herron ASE Certification (no certification related to air conditioning)  Herron's resume states that he is "ASE-Certified in Air-Conditioning," giving the impression of actual certification, not that Herron passed a

26   refrigerant recovery and recycling quiz, which is all Herron did related to air conditioning.  Ex.6, ASE Records for Bill E. Herron.  Apparently, at some point Herron sat for the Air Conditioning Certification test, but did not

27   actually pass it.  *Id.*

28

impression of over seven years of stable employment with one employer. In reality, however, Herron worked at Thompson Chevrolet and supposedly owned his own business for three years during the time he represented to be at G&O Auto Body Shop. Herron Depo., 140:24-141:16. This would have been important to Peri & Sons because frequent movement between employers raises questions as to either the ability to commit to a place of employment or deficient performance. Ex. 1, Peri Decl., ¶ 6. Had Peri & Sons been aware that Herron was lying on his resume, he would not have been hired for the position. Ex. 3, Giannotta Depo., 31:11-14; Ex. 1, Peri Decl., ¶ 7. Not knowing of the numerous falsehoods in his resume and believing that it was accurate, Peri & Sons hired Herron. Ex. 3, Giannotta Depo., 6:4-20, 29:14-30:7; Giannotta Decl., ¶ 4.

### C.      Herron's Employment with and Termination from Peri & Sons

Herron joined Peri & Sons in December 2011. The first 90 days of Herron's employment constituted a probationary period during which Peri & Sons would assess his performance. Herron Depo., 82:10-17. After Herron was hired, he completed a new hire package, which included, among other things, an Ethical Conduct Policy Statement. **Exhibit 9,** Ethical Conduct Policy Statement.[5] This policy statement stated that its purpose was to notify employees of Peri & Sons' ethical expectations, such as: "We tell the truth. … We behave with the highest of moral standards at all times." *Id.* Despite executing the Ethical Conduct Policy Statement, Herron did not disclose to Peri & Sons that he had lied on his resume to secure his new job.

As part of the new hire packet, Herron also received Peri & Sons' Harassment & Discrimination Policy, which specifically stated that disability discrimination (including failure to accommodate without undue burden) is prohibited. **Exhibit 11,** Harassment & Discrimination Policy, 3-4.[6] Although Herron had an opportunity to review and sign the policy, he never lodged a single complaint of alleged disability discrimination or failure to

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

---

[5] This document is authenticated in the Declaration of Brad Johnston, Esq., ¶ 2 (attached hereto as **Exhibit 10**).

[6] This document was attached to Herron's deposition as Exhibit 2 and authenticated at pp. 80:16-81:15.

1   accommodate during his brief employment at Peri & Sons or immediately after his termination.

2   Herron Depo., 80:16-81:15, 82:18-83:5.

3          Soon after Herron was hired and began work, his supervisor, Giannotta, became aware

4   that Herron was not as skilled of a mechanic as he had represented on his resume and claimed

5   during the hiring process.  Giannotta discovered this by observing Herron being slower than

6   expected on routine jobs and attempting to send repair work out to a car dealership when he

7   should have been able to handle the work himself.  Ex. 3, Giannotta Depo., 7:4-8:13, 37:6-14,

8   40:25-41:8; Ex. 4, Giannotta Decl., ¶¶ 3-6.  Giannotta also observed Herron talking on his

9   personal cell phone during work hours despite there being multiple landlines available for

10  business use.  Ex. 3, Giannotta Depo., 11:16-12:15; Ex. 4, Giannotta Decl. ¶ 5.  Giannotta

11  believed Herron was making personal calls on work time because, when Giannotta saw Herron

12  on his cell phone, Herron would hang up.  Ex. 3, Giannotta Depo., 11:16-12:15.  Giannotta's

13  observations are consistent with Herron's cell phone records, which reveal that he made

14  numerous personal calls on work time when he should have been working on Peri & Sons'

15  vehicles.  A handful of telling examples are set forth below:[7]

16      • On Friday, December 23, 2011, Herron placed three calls in the morning.  One at

17         10:35 am, one at 10:39, and one at 11:29 am.  While only one of these calls

18         lasted more than one minute, they could not have all taken place on Herron's one

19         15-minute morning break and would have interrupted his work regardless.  That

20         afternoon, Herron made three more personal calls, one at 12:55 pm (17 minutes

21         to his son, possibly starting during lunch but extending beyond), one at 3:09 pm

22         (20 minutes to his son) and one at 3:32 pm (4 minutes to his son's father-in-law).

23         Not only could these calls not have taken place during Herron's single 15-minute

24         afternoon break due to their timing, the total time Herron spent on the phone

---

[7] Herron's schedule was from 7:00 am to 4:30 or 5:00 pm.  Ex. 5, Herron Depo., 119:4-6; Ex. 3, Giannotta Depo., 21:9-19.  Herron stated in his deposition that he did not recall taking a late lunch and that his lunches were from 12:00 to 1:00 and that breaks were either at 10:00 or 10:30 am and then at 2:00 or 2:30 pm.  *Id.*, 253:3-17.  Further, while Herron testified that lunches were one hour long, they were actually half an hour and to be taken around 12:00 or 12:30.  Ex. 3, Giannotta Depo., 22:1-15.  However, regardless of the factual differences, lunches should not have generally begun before noon or ended after 1:00 pm.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

actually far exceeded his break time. **Exhibit 12**, Verizon Phone Records; Ex. 5, Herron Depo, 225:4-6, 226:5-6 (identifying phone numbers).[8]

- On Wednesday, December 28, 2011, Herron placed or received 12 phone calls between 10:22 am and 4:37 pm, one of which lasted 25 minutes and none of which occurred between 11:35 am and 1:20 pm. In total, these calls amounted to 53 minutes of time, and add up to at least 45 minutes, subtracting the time for calls Herron may claim went unanswered. Ex. 12, Verizon Phone Records; Ex. 5, Herron Depo., 229:5-232:19 (identifying the majority of calls as personal, including the 25-minute call).

- On Friday, December 30, 2011, Herron made or received 11 phone calls. At 11:38 am, he took a call from his daughter which lasted 24 minutes, and then made an 11-minute call at 12:12 pm, took a 19-minute call at 12:22, and made a 6-minute call at 12:52, in addition to various calls that would not have overlapped with his lunch period. However, these calls between 11:38 am and 12:52 pm extended beyond Herron's designated lunch period regardless of whether it was 30 minutes or an hour even if he took an early lunch that day. Ex. 12, Verizon Phone Records; Ex. 5, Herron Depo., 202:3-4, 220:20-21, 229:5-8.

- On Monday, January 9, 2012, Herron took a call from his son, which began at 2:43 pm and lasted 28 minutes, exceeding any allowed break. Ex. 12, Verizon Records; Ex. 5, Herron Depo., 241:9-242:12 (identifying the call as personal).

- On Tuesday, January 17, 2012, the day Herron was terminated, he placed or received 14 phone calls during work hours, only one of which he claims to have been work-related. The first began at 6:58 am, two minutes before Herron was supposed to begin work and lasted for 10 minutes. The second began at 7:11 and lasted 14 minutes. Herron identified these calls as being to his credit union. He then placed five calls to the same number, totaling 11 minutes of time. He also

---

[8] In the interest of brevity, Peri & Sons will provide a single citation string for each bullet point at the end of the paragraph.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

twice called Quicken Loans for personal reasons. These personal calls totaled approximately 47 minutes from the time he was supposed to begin work until approximately 3:00 pm. They were also spread out throughout the day, could not have been made during his two breaks, and did not take place over the noon hour. Ex. 12, Verizon Phone Records; Ex. 5, Herron Depo., 244:5-247:2 (detailing to whom the phone numbers belong).

Even on days where the total number of call minutes were not substantial, these phone calls represented multiple interruptions to Herron's work.

At some point in January 2012, Herron informed Giannotta that he could not perform a basic oil change on a skid steer.[9] Ex. 4, Giannotta Decl., ¶ 6; Ex. 5, Herron Depo., 163:14-164:1. This, coupled with the other performance issues Giannotta had observed, led Giannotta to believe that Herron was not a good fit for Peri & Sons. Ex. 4, Giannotta Decl., ¶ 6. On January 17, 2012, soon after Herron informed Giannotta that he could not change the oil on a skid steer, Herron's employment with Peri & Sons terminated. Ex. 4, Giannotta Decl., ¶ 6.[10] Giannotta testified that his decision to terminate Herron's employment had nothing to do with Herron's alleged disability; it rested on Herron's inadequate performance. Ex. 4, Giannotta Decl., ¶¶ 7, 10; Ex. 3, Giannotta Depo., 23:25-24:9 ("Q: Did Mr. Herron's back condition play any part at all in your terminating him? A: No.").

In fact, Giannotta was unaware of the particulars of Herron's "disability" (other than he supposedly had a bad back) because Herron had only asked for assistance once to lift a transmission system, which was being rebuilt and reinstalled in a truck. Ex. 4, Giannotta Decl., ¶ 7. Giannotta asked another employee to help Herron, and the two of them quickly accomplished the task. *Id.* Herron did not provide any specifics about his alleged back problem, and did not mention any lifting restrictions or any other potential limitations he might

---

[9] A skid steer "is a small rigid frame, engine-powered machine with lift arms used to attach a wide variety of labor-saving tools or attachments" made by a variety of manufacturers. Skid-steer loader, http://en.wikipedia.org/wiki/Skid-steer_loader, last accessed December 23, 2013. These machines can be used for a wide variety of purposes with the various attachments that can be used with them. *Id.*

[10] Peri & Sons recognizes that Herron claims he was laid off, not terminated, but as will be discussed in the argument below, this distinction is not material to the resolution of Herron's claims.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

have. *Id.* He did not seek any accommodations for his back condition, and Giannotta never observed Herron have difficulty performing his duties as a result of any physical limitation. *Id.* This is entirely consistent with Herron's admissions that, other than an alleged communication that he could not complete dashboard work (discussed below), ***he was physically able to perform his duties as a mechanic at Peri & Sons, did not need any accommodations, and did not ask for any such accommodations***. Ex. 5, Herron Depo., 44:12-45:1, 62:6-11 ("Q: Did you ever ask for any modification or an accommodation to do your job? A: No. I had never needed any up until that point.").

Although Herron speculates that his termination stemmed from an alleged comment to Giannotta that Herron could not do dashboard work on a truck because of his back, Giannotta testified that Herron's alleged inability to do something because of his back played no part in the decision to terminate Herron's employment. Ex. 3, Giannotta Depo., 24:6-9. Herron has no admissible evidence to rebut Giannotta's testimony,[11] especially given the fact that Giannotta responded with "okay" to Herron's statement he could not do dashboard work, and did not compel Herron to do the work. Ex. 5, Herron Depo., 59:24-60:4, 61:12-23. Herron has no recollection of Giannotta being upset at Herron's alleged inability to do the work. Dwayne Fugate, another Peri & Sons mechanic, actually completed the work after Herron's termination. **Exhibit 13**, Deposition of Dwayne Fugate ("Fugate Depo."), 6:6-7:4.

### D.    Posting of a Mechanic's Position After Herron's Termination

In the end of January 2012, Peri & Sons advertised another opening for a mechanic position. **Exhibit 14**, January 30, 2012, Craigslist Job Posting.[12] Herron speculates with no supporting evidence that the position was "his." Giannotta, who has personal knowledge of the reason for the posting, however, testified that the position was placed on Craigslist in an effort

---

[11] Herron testified at his deposition that his belief the dashboard incident played a part in his termination comes from the fact that he was allegedly told he was "laid off due to budget cuts" two days after the incident, but then "his" position was posted on Craigslist shortly thereafter. These allegations will be addressed below. However, to keep the record clear, Giannotta testified that he never advised Herron that he was "laid off due to budget cuts." Rather, Giannotta told Herron that Herron was being let go because "it wasn't working out." Ex. 3, Giannotta Depo., 15:5-9.

[12] This exhibit was disclosed by Herron and he authenticated it in his deposition at pages 173:3-174:22.

to recruit someone for Peri & Sons' expanding California operation.  Unlike its Nevada operation, Peri & Sons did not have a permanent mechanic crew in California, and in the past some of Peri & Sons' Nevada mechanics had to travel to California as needed.  Ex. 1, Peri Decl. ¶ 5; Ex. 3, Giannotta Depo., 34:7-11.

The position was posted in the winter time because Peri & Sons had traditionally had difficulty recruiting qualified candidates to work as mechanics, and it ordinarily posted a position about 30-60 days before actually needing to fill it.  Ex. 3, Giannotta Depo., 40:8-19. Further, Giannotta intended to train the potential candidate before sending him or her to California for the May harvest season.  Ex. 3, Giannotta Depo., 33:19-23.  Having received no satisfactory response to the original posting, Peri & Sons re-posted the position again in February 2012, seeking qualified candidates.  Ex. 3, Giannotta Depo., 35:7-36:24.  When Peri & Sons was again unsuccessful in finding a candidate, Fugate agreed to go to California for the harvest season there.  *Id.*, 36:6-13; Ex. 13, Fugate Depo., 10:6-25.

Herron has no admissible evidence that Giannotta's intent in posting the position was anything other than what Giannotta expressed.  In fact, Herron admits that Giannotta told him exactly the same thing when Herron called to inquire about the new Craigslist posting after his termination (and over a month before Peri & Sons received a demand letter from Herron's counsel.)  Ex. 5, Herron Depo., 177:6-178:21.  And, while Herron asserts that the Craigslist posting placed after his termination was allegedly the same posting to which he originally responded, he has no admissible evidence that Peri & Sons did not use the same posting for a California-related position demanding the same qualifications.  Although the position posted after Herron's termination indicated that its location was Yerington, Nevada, this was because Peri & Sons intended to hire an individual in Yerington, Nevada, train him or her, and then send that individual to California.  Ex. 3, Giannotta Depo., 16:16-25, 33:19-23 ("Q: Well, it says on there 'Mechanic Yerington, Nevada.'  Can you explain why that is?  A: Yes, because we would hire him here because this is our actual corporate office.  We would hire them, train them here, go to California."); Ex. 13, Fugate Depo., 10:6-25.  Giannotta (who was terminated from Peri & Sons months before his deposition) testified that the position was not Herron's position, but a

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

position for someone to be trained in Yerington and sent to California. Ex. 3, Giannotta Depo., 33:4-23.

### E.    The Allegations Herron Provided NERC

In or about April-May 2012, Herron completed an Intake Inquiry Form provided on the Nevada Equal Rights Commission's ("NERC") website. **Exhibit 15**, Intake Inquiry Form.[13]  In doing so, Herron indicated that his complaint concerned discrimination based on "Disability." *Id.,* Section E.  In identifying the alleged actions that Peri & Sons took against him and the dates when these actions occurred, Herron marked "Lay off" and "Discharge," providing a single date of January 17, 2012.  Herron did not mark the box labeled "Failure to Accommodate," nor did he provide dates of instances where Peri & Sons failed to accommodate him. *Id.*, Section F.

In addition, Herron described the supposed events constituting discrimination as: "I was told I was being laid off due to budget cuts.  I believe I was treated this way because of my back disability which limits lifting." *Id.*, Section J.  Herron also stated that his supervisor had told him the layoff was due to budget cuts, yet claimed Peri & Sons soon thereafter advertised his position and temporarily transferred his duties to others who were not disabled. *Id.*, Section J. Consistent with his statements in Sections E and F, in Section J of the Intake Inquiry Form Herron stated that he was supposedly subject to "disability discrimination, including termination." *Id.*  At no point did Herron indicate that he requested an accommodation, needed an accommodation, or was denied an accommodation.  Notably, at the time when Herron completed the Intake Inquiry Form, he was represented by Jeffrey Dickerson, Esq. (his current counsel) and specifically identified Mr. Dickerson as someone whom NERC could contact in case it needed to reach Herron. *Id.*, Section C; *see also* **Exhibit 16**, March and April 2012 Correspondence from Jeffrey Dickerson, Esq. to Brad Johnston, Esq.[14]

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

---

[13] As this document was produced by Herron, he cannot now dispute its authenticity.  In addition, Herron authenticated this document in his deposition at 184:3-13.

[14] Peri & Sons submits this correspondence to show that Herron was represented by counsel at the time he completed the Intake Inquiry Form, which is permissible under FRE 408.  The correspondence is authenticated in the Declaration of Brad Johnston, at ¶ 3.

On or about June 29, 2012, NERC sent a letter to Herron, enclosing his draft discrimination charge and a blank remedy request. **Exhibit 17**, June 29, 2012 Letter and Enclosures.[15]  The draft charge NERC had prepared expounding Herron's allegations provided, in relevant part, that (i) a few days before his layoff, Herron was asked to perform dash work, but advised his supervisor that he was unable to do so due to his disability; (ii) on January 17, 2012, Herron's supervisor informed him that he was laid off due to budget cuts, but this was pretext for discrimination because Herron later found out on the internet that Peri & Sons was advertising for his position; and (iii) when Herron called to inquire about the position, he was told that the position was in California. *Id.*  Similar to the Intake Inquiry Form, the draft charge only marked the box labeled "Disability" and did not mark the box for "Other" to indicate any additional claims.  Additionally, the draft charge indicated that the earliest and latest date when discrimination occurred was January 17, 2012—the day of Herron's termination, not the day he purportedly informed his supervisor he could not do dashboard work which was a "few days prior" to January 17, 2012.  *Id.*

In its letter of June 29, 2012, NERC asked Herron to "[r]eview the complaint form carefully to ensure that it is accurately summarizes [sic] what you allege happened to you."  *Id.*  Herron made absolutely no changes to the draft discrimination charge and, on or about July 12, 2012, Herron signed it in its original form.  *See id.*; *see also* **Exhibit 18**, Signed Discrimination Charge.[16]  Not surprisingly, the signed charge listed Herron's January 17, 2012 termination date as the only date on which the alleged discrimination took place.  Ex. 18, Signed Discrimination Charge.  Per NERC's direction, Herron completed the remedy request, seeking (among other things) attorney's fees.  Ex. 17, June 29, 2012 Letter and Enclosures (directing Herron to fill in the remedy request); Ex. 18, Signed Discrimination Charge, Remedy Request.  The remedy request was also executed by Mr. Dickerson as Herron's counsel.  Ex. 18, Signed Discrimination Charge, Remedy Request.

---

[15] As this document was produced by Herron, he cannot now dispute its authenticity.

[16] As this document was produced by Herron, he cannot now dispute its authenticity.  In addition, Herron authenticated this document in his deposition at 194:22-195:4.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

On or about August 1, 2012, NERC sent a Notice of Charge of Discrimination (the "Charge") to Peri & Sons, enclosing a copy of Herron's charge and seeking a response by September 5, 2012.  *See* **Exhibit 19**, Charge.[17]  As with the Intake Inquiry Form, the draft charge, and the signed charge, the Charge marked only the "Disability" box as the basis for the supposed discrimination, ignoring all other boxes. *Id.*  This lawsuit eventually followed.

## IV.   Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 330.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *see also Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (only admissible evidence can be considered on summary judgment).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

///

///

---

[17] As this document was produced by Herron, he cannot now dispute its authenticity.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

# V.     Argument

## A.     Herron's Failure to Accommodate Claim Fails as a Matter of Law Because He Failed to Exhaust His Administrative Remedies as to This Claim

A plaintiff who attempts to bring an ADA claim must first exhaust his administrative remedies. *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006) (plaintiff must file administrative charge before filing ADA suit in federal court). The jurisdictional scope of a subsequent court action is therefore limited to the claims brought before the administrative agency. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) ("The jurisdictional scope of [a discrimination] plaintiff's court action depends on the scope of the EEOC [or state agency] charge and investigation."). "The specific claims made in district court ordinarily must be presented to the EEOC" or a state agency for the district court to consider them. *Id.* Thus, if an individual's allegations in his complaint are not "like or reasonably related to" the allegations in his administrative charge, or "within the scope of an EEOC [or NERC] investigation that reasonably could [have been] expected to grow out of the allegations," the Court must dismiss the claims that are outside the scope of the charge. *See id.* In other words, if a plaintiff asserts claims in his complaint that were not substantially asserted to the administrative agency, they cannot be considered by a district court and must be dismissed as a matter of law. *See Duncan v. Rio Suite Hotel & Casino*, No. 2:12–cv–00565–MMD–VCF, 2012 WL 5818125, *5 (D.Nev. 2012) ("A plaintiff's claims are reasonably related to allegations in the charge [only] to the extent that those claims are consistent with the plaintiff's original theory of the case, as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful.")

Here, Herron did not present any facts or allegations to NERC that would give rise to a claim for failure to accommodate. In filling out the Intake Inquiry Form, Herron was presented with multiple options to describe how Peri & Sons allegedly discriminated against him. Ex. 15, Intake Inquiry Form, Section F. Though there was a box marked "Failure to Accommodate," Herron chose not to check that box. *Id.* This omission told NERC that Peri & Sons had not denied Herron a reasonable accommodation. Rather, he only checked the boxes for "Lay off"

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1    and "Discharge," providing the date of his discharge as the only date when discriminatory acts

2    allegedly took place. *Id.* A failure to check the proper box, along with lack of relevant facts

3    alleged in a charge demonstrates that a later-asserted claim was not encompassed in the charge.

4    *See, e.g., Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3rd Cir. 2013) (affirming

5    determination that plaintiff's retaliation claim not encompassed in administrative filing where

6    plaintiff failed to check retaliation box or assert retaliatory conduct)  Herron, too, could have

7    easily checked the failure to accommodate box if he intended to assert a failure to accommodate

8    claim.[18] As Herron did not even do the most basic thing to alert NERC of his claim that Peri &

9    Sons failed to accommodate his request, this Court should dismiss the claim for lack of

10   jurisdiction.

11         In addition to not asserting that he was denied an accommodation directly by checking

12   the box, nowhere in his Intake Inquiry Form did Herron mention that he had asked Peri & Sons

13   for an accommodation, been denied any sort of accommodation, or any other facts implying a

14   failure to accommodate claim. *See generally*, Ex. 15, Intake Inquiry Form; Ex. 19, Charge.

15   Rather, he simply asserted in the Intake Inquiry Form that he was told he "was being laid off

16   due to budget cuts," that he believed this was due to his "back disability which limits lifting,"

17   and that he believed the reason for his termination was pretextual because he later saw what he

18   believed was his position being advertised.  Ex. 15, Section J.  These claims are in no way

19   related to a request for or a denial of an accommodation, which is necessary for a failure to

20   accommodate claim, *and are all that Herron provided NERC*.  Ex. 5, Herron Depo., 187:3-17

21   (responding to a question about whether he provided NERC any information not included in the

22   intake inquiry form by stating: "I don't know. I don't recall. I don't think so. I think everything

23   that they got is right here.").  Furthermore, Herron's use of the phrase "pretext" in the Intake

24   Inquiry Form shows that he or his attorney knew how to present Herron's claims to NERC and

25   did not simply omit the failure to accommodate claim.  Indeed, Herron has now testified that he

26

27

28   _____
     [18] Herron was also represented by counsel at the administrative stage.

1   never sought an accommodation, further demonstrating that he had no accommodation claim to

2   present to NERC.

3       Herron's Charge is similarly lacking in failure to accommodate allegations or

4   implications.  In general, for an employer to have a duty to accommodate or engage in the

5   interactive process, the plaintiff must have requested an accommodation.  *Brown v. Lucky*

6   *Stores, Inc.*, 246 F.3d 1182, 1188-1189 (9th Cir. 2001).  While there is an exception to that

7   general rule, this exception *only applies* when the employer "'(1) knows that the employee has a

8   disability, (2) knows, or has reason to know, that the employee is experiencing workplace

9   problems because of the disability, and (3) knows, or has reason to know, that the disability

10  prevents the employee from requesting a reasonable accommodation.'"  *Id.* (quoting *Barnett v.*

11  *U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2001) (*en banc*) vacated on other grounds by *U.S.*

12  *Air, Inc. v. Barnett*, 535 U.S. 391 (2002)).

13      In his charge, the full extent of Herron's purported accommodation allegations were as

14  follows: "A few days prior to being laid off, I was asked to perform dash work.  I advised my

15  supervisor that I was unable to due to my disability."  Ex. 19, Charge.  This statement does not

16  show that Herron requested an accommodation to be able to do dashboard work or any other

17  task, nor does it imply such a request.  Herron did not make any reference to accommodations

18  or discuss any accommodation requests in his charge (or Intake Inquire Form) whatsoever.  *See*

19  *generally, id.*; *see also* Ex. 15, Intake Inquiry Form.  He also did not (and could not) expressly

20  allege that Peri & Sons denied him a requested accommodation because he never made such a

21  request.  In fact, during his deposition, Herron admitted that when he supposedly advised his

22  supervisor that he could not do dashboard work, his supervisor responded by saying "okay," and

23  left it at that.  Ex. 5, Herron Depo., 59:24-60:4.  Herron further admitted that he did not ask that

24  somebody else do the dashboard work or otherwise request an accommodation so that he could

25  do the dashboard work.  *Id.,* 60:22-61:5.  Further, he admitted that he had not sought any other

26  modifications or otherwise sought an accommodation during his employment with Peri & Sons.

27  *Id.,* 44:23-45:1, 61:6-11.  Thus, Herron unsurprisingly did not present any facts to NERC

28

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1  demonstrating a failure to accommodate claim or that are like or reasonably related to a failure

2  to accommodate claim.

3       Finally, in assessing whether NERC or the EEOC would likely have investigated any

4  claims that were not specifically alleged in a charge or whether particular claims are reasonably

5  related to allegations in a charge, "it is appropriate to consider such factors as … dates of

6  discriminatory acts specified within the charge, …." *B.K.B. v. Maui Police Dep't*, 276 F.3d

7  1091, 1100 (9th Cir. 2002). In his charge of discrimination, Herron specified that the earliest

8  date of discrimination was January 17, 2012, and that the latest date of discrimination was

9  January 17, 2012. Ex. 19, Charge. Similarly, in his Intake Inquiry Form, the only date Herron

10  provided regarding discriminatory acts was January 17, 2012. Ex. 15, Intake Inquiry Form. As

11  such, Herron told NERC that there was no discriminatory conduct prior to his termination on

12  January 17, 2012. Thus, Herron entirely failed to provide NERC with any allegations or other

13  reasons to suspect a failure to accommodate claim, and the Court should not allow him to

14  pursue such a claim now.

15      **B.**    **The Admissible Evidence Shows that Herron Cannot Present a Prima Facie**

16                **Case for Either Disability Discrimination or Failure to Accommodate**

17       In responding to a motion for summary judgment in a discrimination case, "a plaintiff

18  may produce direct or circumstantial evidence demonstrating that a discriminatory reason more

19  likely than not motivated the defendant's decision, or alternatively may establish a prima facie

20  case under the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411

21  U.S. 792, 802-805 (1973)." *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th

22  Cir. 2005); *see also Snead v. Metro Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093-94 (9th Cir.

23  2001) (applying the *McDonnell-Douglas* framework in an ADA discrimination case). As

24  Herron lacks direct evidence of discrimination,[19] Herron must first establish a *prima facie* case

25  for each of his claims separately to survive summary judgment. *Harris v. Walgreens*, 2012

26

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

27  [19] "'Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or

28  presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)) (alteration in *Godwin*).

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1  U.S.Dist. LEXIS 172625 (D. Nev. Dec. 4, 2012) (separately reviewing the prima facie elements

2  for various discrimination claims).

3        If this Court determines that Herron has established a *prima facie* case, the burden shifts

4  to Peri & Sons to articulate a legitimate, non-discriminatory reason for its actions.  Once Peri &

5  Sons meets this minimal burden, "the presumption of unlawful discrimination 'simply drops out

6  of the picture.'"  *Dominguez-Curry*, 424 F.3d at 1037 (quoting *St. Mary's Honor Ctr. v. Hicks*,

7  509 U.S. 502, 511 (1993)).  Herron must then show that Peri & Sons' proffered reason for his

8  termination was merely a pretext for discrimination in order to survive summary judgment.  *Id.*

9        **1.     Herron Cannot Demonstrate a Prima Facie Disability Discrimination
10              Claim or Failure to Accommodate Claim**

11        To establish either a *prima facie* failure to accommodate claim or a disability

12  discrimination claim under the ADA, a plaintiff must show with that (i) he is disabled within the

13  meaning of the ADA, (ii) he is a qualified individual capable of performing the essential

14  functions of the job with reasonable accommodation, and (iii) he suffered an adverse

15  employment action because of his disability.  *See Samper v. Providence St. Vincent Medical*

16  *Center*, 675 F.3d 1233, 1237 (9th Cir. 2012) (failure to accommodate); *Snead*, 237 F.3d at 1087

17  (disability discrimination).  In addition, with respect to failure to accommodate, the defendant

18  must have denied the plaintiff a reasonable accommodation.  *See, e.g., Lucky Stores, Inc.*, 246

19  F.3d 1182, 1188-1189 (holding that where plaintiff did not request an accommodation or

20  otherwise create a duty for defendant to accommodate, the defendant could not be liable under a

21  failure to accommodate theory). [20]  Herron cannot sufficiently demonstrate that he is a qualified

22

---

23  [20] While not an express element of the prima facie case as generally described in the Ninth Circuit, common sense
24  and other circuits also require that the plaintiff have been denied a reasonable accommodation as part of the prima
    facie case.  *See, e.g., Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (describing the prima facie
25  elements of a failure to accommodate claim as "(1) that he was an individual who had a disability within the
    meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation
26  he could perform the essential functions of the position; and (4) that the employer refused to make such
    accommodations.") (internal quotations and alterations omitted); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789,
27  797 (7th Cir. 2005) (describing the prima facie factors as follows: "(1) [plaintiff] is a qualified individual with a
    disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the
    disability."); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1 (2nd Cir. 1999) (describing the prima facie
28  factors of a failure to accommodate claim as: "(1) that [plaintiff] was an individual who had a disability within the
    meaning of the statute; (2) that [defendant] had notice of his disability; (3) that with reasonable accommodation he

1    individual with a disability, that he was terminated because of an alleged disability, or that he

2    was denied a reasonable accommodation.

            a.       **Herron Is Not a Qualified Individual with a Disability**

4            "An individual is qualified if 'with or without reasonable accommodation, he can

5    perform the essential functions of the employment position ...." *Samper*, 675 F.3d at 1237

6    (quoting 42 U.S.C. § 12111(8)).  In determining whether a plaintiff is "qualified," a court must

7    first determine "'whether the individual satisfies the requisite skill, experience, education and

8    other job-related requirements of the position.'" *Id.* (quoting *Bates v. United Parcel Svc., Inc.*,

9    511 F.3d 974, 990 (9th Cir. 2007) (*en banc*)).  Only then do courts inquire as to "'whether the

10   individual can perform the essential functions ... with or without a reasonable

11   accommodation.'" *Id.* (quoting *Bates*, 511 F.3d at 990) (alteration in *Samper*).

12           Herron cannot show that he was qualified for a mechanic job at Peri & Sons.  Herron

13   claims that the January 30, 2012 job posting on Craigslist (and an identical February 20, 2012,

14   posting), was for "his" position, and that the posting was "the same identical write-up from what

15   [he] answered to." Ex. 5, Herron Depo., 174:19-175:5.  In other words, Herron makes clear that

16   the qualifications set forth in the January and February 2012 postings are the qualifications he

17   needs for the position at issue.  These requirements include: "excellent general repair skills," the

18   ability to work on a variety of equipment, and a "***certificate of completion from a certified***

19   ***technical school or equivalent.***" Ex. 14, January 30, 2012, Craigslist Job Posting (emphasis

20   added); **Exhibit 20**, Feb. 20, 2012 Craigslist Job Posting (emphasis added).[21]  Giannotta

21   testified that certification was important because it told him what an applicant could or could

22   not do as a mechanic, e.g., what skills an applicant would have.  Ex. 3, Giannotta Depo., 17:12-

23   18:1.

24           Here, while Herron's resume falsely stated he had received a Certificate of Completion

25   from the Arizona Automotive Institute after a full year of study, Herron admitted at his

26

27   could perform the essential functions of the position sought; and (4) that [defendant] refused to make such
     accommodations.")

28   [21] Authenticated in Giannotta's deposition at p. 35:7-12.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1    deposition that he never completed the coursework and never received a Certificate of

2    Completion. Herron, in fact, only attended the Arizona Automotive Institute for about four (4)

3    months before leaving without graduating. Ex. 5, Herron Depo., 139:3-14. Thus, by Herron's

4    own admissions, he lacked a critical qualification required for the position that Herron claims

5    was "his," and was thus not qualified. *See Johnson v. Board of Trustees of Boundary County*

6    *School Dist. No. 101*, 666 F.3d 561, 567 (9th Cir. 2011) (affirming summary judgment because

7    teacher whose teaching certificate had expired was not qualified for teaching position, and thus

8    could not make out prima facie claim of discrimination).

9        Not only did Herron not meet the legitimate prerequisites for the position, Herron

10   repeatedly demonstrated to Giannotta that he did not have the skill or experience needed for the

11   job. Some examples include: (1) when he was requested to change the oil on a skid steer (a

12   common and critical piece of equipment at Peri & Sons), he informed Giannotta that he did not

13   know how to do so, Ex. 4 Giannotta Decl., ¶ 6; *see also* Ex. 3, Giannotta Depo., 7:6-18; Herron

14   Depo., 163:14-164:6; and (2) Herron took substantially longer on many tasks than others did,

15   such as taking all day on a standard service rather than the normal one to two hours, Ex. 3,

16   Giannotta Depo., 37:6-14. Even another mechanic who did not pay particular attention to what

17   Herron was doing noticed that Herron was slow on routine jobs. Ex. 13, Fugate Depo, 12:2-3.

18   As Giannotta put it in his deposition, the whole picture of Herron's performance simply "wasn't

19   good." Ex. 3, Giannotta Depo., 42:18-20. In addition to the lack of proper certification, all of

20   these undisputed performance issues demonstrate that Herron lacked the requisite qualifications

21   for the position. Accordingly, Herron's claims should be dismissed.

22        **b.**      **Herron Was Not Terminated Because of His Alleged Disability**

23        The causation standard under the ADA requires a showing that the plaintiff suffered

24   discrimination "by reason of" his disability. *Martin v. California Dept. of Veterans Affairs*, 560

25   F.3d 1042, 1048-49 (9th Cir. 2009). The United States Court of Appeals for the Ninth Circuit

26   has determined that the "by reason of" standard employed under the ADA establishes a

27   "motivating factor" causal standard for liability. *Id.; see also Head v. Glacier Nw., Inc.,* 413

28   F.3d 1053, 1066 (9th Cir. 2005). Where a plaintiff cannot show that his alleged disability was a

motivating factor in the actions taken against the plaintiff, his ADA claim fails.  *Martin*, 560 F.3d at 1049 (plaintiff who was otherwise qualified could not establish she was denied services by reason of her disability).

Herron cannot offer any admissible evidence that his supposed disability played any part in his termination.  Herron has not stated that anyone ever said anything about his alleged disability, and he has not produced any other admissible evidence that his disability was ever considered as a negative factor against him.  Giannotta specifically testified that his decision to terminate Herron's employment had nothing to do with Herron's alleged disability; it rested on Herron's inadequate performance.  Ex. 4, Giannotta Decl., ¶¶ 7, 10; Ex. 3, Giannotta Depo., 23:25-24:9 ("Q: Did Mr. Herron's back condition play any part at all in your terminating him? A: No.").

Herron relies on the closeness between the time when he told his supervisor that he could not do dashboard work and his termination as support for a causal connection between the two events.  Ex. 5, Herron Depo., 61:24-62:14.[22]  While temporal proximity may support a causal inference in some circumstances, here every aspect of Herron's employment was temporally proximate to every other aspect of his employment because he only worked at Peri & Sons for a little over one month.  Thus, even his hiring is temporally proximate to his termination.  This is not a situation where an employee worked for a company for six years, asked for an accommodation or became disabled, and was then terminated soon thereafter.  This is a case where Plaintiff was hired, Peri & Sons determined he could not do the job he claimed he was capable of doing, and then terminated him during his probationary period because he could not do the job.  *See FDIC v. Henderson*, 940 F.2d 465 (9th Cir. 1991) (requiring consideration of the relevant context).  Thus, the temporal proximity that Herron cites is insufficient because if it were sufficient, all new employees could claim disability discrimination if their employers, such as Peri & Sons in this case, quickly discovered that they

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

---

[22] Herron's assertions regarding Peri & Sons later advertising for a similar position concern whether Peri & Sons' legitimate and non-discriminatory reason for his termination was mere pretext for discrimination, not the prima facie element of a causal connection.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

are not fit for their job and decide to terminate them.  A temporal connection that could exist in all new employment contexts cannot be a sufficient basis to overcome summary judgment.

### 2.      Herron Did Not Request and Was Not Denied a Reasonable Accommodation

The duty to engage in the interactive process to find a reasonable accommodation and to accommodate an employee if a reasonable accommodation is found is triggered by an employee's request for an accommodation in plain language.  *Barnett v. U.S. Airways*, 228 F.3d at 1112.  An employer is only required to engage in the interactive process without a request for an accommodation if the employer "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) *knows or has reason to know that the disability prevents the employee from requesting a reasonable accommodation.*"  *Id.* (emphasis added); *see also Lucky Stores*, 246 F.3d at 1188-1189.  If an employer never has the duty to accommodate or to engage in the interactive process, it cannot be held liable for failing to accommodate the employee.  *See Barnett v. U.S. Airways*, 228 F.3d at 1115 ("The range of possible reasonable accommodations, *for purposes of establishing liability for failure to accommodate,* can extend beyond those proposed …") (emphasis added); *Lucky Stores*, 246 F.3d at 1188 ("[Defendant] had no duty to provide an accommodation for [Plaintiff], given that she never requested one.").

Herron admitted during his deposition that he never requested and was never denied an accommodation.  Ex. 5, Herron Depo., 44:12-45:1, 62:6-11 ("Q: Did you ever ask for any modification or an accommodation to do your job? A: No. I had never needed any up until that point.").  Multiple times during his deposition, Herron made statements such as the following in reference to accommodations: "I never asked for any" and "I never asked for any assistance that I recall."  *See, e.g.*, Ex. 5, Herron Depo., 44:23-45:1, 61:8-11, 64:1-4; 65:4-19.[23]  In fact, Herron

---

[23] It is also worth noting that Herron did not request an accommodation from his subsequent employers despite also being a mechanic. Ex. 5, Herron Depo., 91:9-92:5; 93:21-94:5, 95:16-96:1.  While it is theoretically possible that his duties as a mechanic at Carson Truck & Auto and other employers would not be similar to his duties at Peri & Sons, this is implausible, especially considering Herron described at least one of the jobs as not being light duty in any way. *Id.*, at 91:9-92:5.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

stated that up until being asked to perform dashboard work, everything he was asked to do at Peri & Sons was something he could physically do without accommodation. *Id.*, 44:19-45:1. Herron's failure to request any accommodation is fatal to his claim.[24]

As to Herron's claimed request not to do dashboard work, it bears noting that Herron did not seek an accommodation to be able to do the work; rather, he supposedly told Giannotta that he could not do the work altogether. *Id.*, 60:22-61:3. Contrary to the allegations in his Complaint, Herron did not ask that someone else do the work, or that he be given any particular assistance in order to do the work. *Id.*, 61:4-5. When Herron told Giannotta that he could not do the dashboard work, Giannotta admittedly accepted it without a memorable comment or negative response. *Id.*, 59:24-60:9, 61:12-23. At no point did Giannotta require Herron to perform the task Herron said he could not do. *Id.* Thus, even if the Court considers Herron's simple statement that he could not do the dashboard work to be a request for an accommodation, he was in fact accommodated by not being required to do the work.[25]

C.     **Herron Cannot Demonstrate That Peri & Sons' Legitimate and Non-discriminatory Reasons for His Termination Were Pretextual**

As described above, Peri & Sons terminated Herron for performance reasons, and therefore, "the presumption of unlawful discrimination 'simply drops out of the picture.'" *See Dominguez-Curry*, 424 F.3d at 1038. Herron must, accordingly, present either some direct evidence or specific and substantial circumstantial evidence that Peri & Sons' reasons for terminating him were pretextual. *Id.*; *Biggs v. Hartford Financial Services Group, Inc.*, 207 Fed.Appx. 884, 885 (9th Cir. 2006). Herron has no direct evidence of discrimination, so he must present specific and substantial circumstantial evidence of pretext, which he cannot do.

---

[24] There is exception to an employee's duty to request an accommodation if the employer recognizes the need to accommodate a known disability that "prevents the employee from requesting a reasonable accommodation." *Barnett v. U.S. Airways*, 228 F.3d at 1112; *see also Lucky Stores*, 246 F.3d at 1188-1189. This exception does not apply here because Herron's alleged disability is a supposed problem with his back that limits bending and certain maneuvering, not seeking an accommodation. Ex. 5, Herron Depo., 27:4-17.

[25] While Herron claims that he had never previously requested an accommodation and Peri & Sons does not contend that he did, Herron did receive assistance in accomplishing various tasks and he was given full access to all shop equipment to help him do his job, such as a transmission jack to allow him to lift heavier items. *See* Ex. 3, Giannotta Depo., 8:14-9:3; Ex. 4, Declaration of Robert Giannotta, ¶ 7; Ex. 13, Fugate Depo., 8:11-9:4; Ex. 5, Herron Depo., 251:5-13.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

1       Herron relies on two arguments in an attempt to show pretext:  (1) the temporal

2   proximity between him stating he could not do dashboard work and his termination; and (2) his

3   claim that Giannotta told him he was being laid off due to budget cuts, but later advertised "his"

4   position.  As explained above, the temporal proximity between Herron telling his supervisor he

5   could not do dashboard work and his termination must be viewed in conjunction with Herron's

6   short tenure with Peri & Sons (just over a month) and cannot create an inference of connection

7   between these two events.  This is particularly true given that that the dashboard work was a

8   non-issue for Giannotta, who did not require or encourage Herron to do the work thereafter.  Ex.

9   5, Herron Depo., 59:24-60:9, 61:12-23.  It also bears noting that on the single occasion when

10  Herron sought assistance to lift a transmission system, Giannotta asked another employee to

11  help Herron, and the two of them quickly accomplished the task.  Ex. 4, Giannotta Decl., ¶ 7.

12  As Giannotta did not hesitate to give Herron needed assistance in the past and accommodated

13  Herron by not requiring him to do the dashboard work, it makes no sense that Giannotta would

14  have terminated Herron because of his alleged back problems.

15      Herron's claim that Giannotta told him he was being laid off due to budget cuts, while

16  Peri & Sons supposedly later advertised for "his" position is insufficient to demonstrate an issue

17  of material fact regarding pretext.  Peri & Sons did not advertise a position to replace Herron,

18  and Herron has no admissible evidence that Peri & Sons sought someone to replace him.

19  Rather, he wildly speculates that Peri & Sons sought to replace him.  Ex. 5, Herron Depo.,

20  174:19-175:5.  The admissible evidence shows, however, that Peri & Sons was seeking an

21  individual to be trained in Yerington and sent to California to work during the California

22  harvest season.  Ex. 3, Giannotta Depo., 16:16-25; Ex. 13, Fugate Depo., 10:6-15.  Peri & Sons

23  was ultimately unsuccessful in filling that position and had to send a volunteer from Yerington

24  to cover the work during the California harvest season.  Ex. 13, Fugate Depo., 10:6-15.  Herron

25  has no admissible evidence to the contrary.  Ex. 5, Herron Depo., 177:13-178:21.  Herron "may

26  not rely on denials in the pleadings but must produce specific evidence, through affidavits or

27  admissible discovery material, to show that [a] dispute exists," *Bhan v. NME Hosps., Inc.*, 929

28  F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). This, Herron cannot do, and summary judgment in Peri & Sons' favor should be granted.

**D.     The After-Acquired Evidence Doctrine Limits Herron's Potential Damages**

The after-acquired evidence doctrine dictates that an employer may avoid certain types of damages where it can show that it would have terminated or not hired an employee for wrongdoing discovered after an allegedly wrongful termination. *McKennon v. Nashville Banner Publishing*, 513 U.S. 352, 36062 (1995). In *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1071 n.15 (9th Cir. 2004), the Ninth Circuit explained that the after-acquired evidence doctrine applied not only to claims under the Age Discrimination in Employment Act, but to Title VII claims as well because the substantive features and purpose of the statutes were the same. The same logic dictates that the after-acquired evidence doctrine applies to claims brought pursuant to the ADA, as the common purpose of all these statutes is "the elimination of discrimination in the workplace." *Id.* (internal quotations omitted); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 621 (3rd Cir. 1996) (applying the after-acquired evidence doctrine in an ADA case) *abrogated on other grounds by Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999).

If the Court does not grant summary judgment against Herron and dismiss his Complaint in its entirety, the Court should limit Herron's potential recovery under the after-acquired evidence doctrine. To limit damages because of after-acquired evidence, a defendant employer must: (1) present after-acquired evidence of an employee's misconduct; and (2) demonstrate by a preponderance of the evidence that it would have fired the employee for that misconduct. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996). Where an employee establishes these elements, "neither reinstatement nor front pay is an appropriate remedy." *McKennon*, 513 U.S. at 353. Further, the Supreme Court has explained that, in an after-acquired evidence situation, the "beginning point in formulating a remedy should … be a calculation of back pay from the date of the unlawful discharge to the date the new information was discovered," with consideration for any extraordinary equitable circumstances affecting the interests of either party. *Id.* Thus, because Peri & Sons discovered through the course of

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000

discovery that Herron lied on his resume to secure a job at Peri & Sons, any potential award should be limited to backpay from the time of his termination to the date of his deposition, November 7, 2013.  *See* Ex. 3, Giannotta Depo., 29:8-30:13, 31:11-32:14 (testifying that he would not have hired Herron had he known of the misrepresentations on his resume because employees who lie to you from the beginning are not good employees); Ex. 1, Peri Decl., ¶ 7 (stating that Herron would not have been hired if the misrepresentations were known before employment, and that Herron would have been terminated if the misrepresentations were discovered during employment).

## VI.  **Conclusion**

For the reasons stated above, Peri & Sons respectfully requests that the Court grant judgment as a matter of law and dismiss each of Herron's claims with prejudice.  If the Court declines to do so, Peri & Sons requests that the Court apply the after-acquired evidence doctrine to limit Herron's potential backpay award to the period between his termination and the discovery of his substantial resume misrepresentations.

DATED this 2nd day of January, 2014.

HOLLAND & HART LLP

By: /s/ Dora V. Lane, Esq.
Dora V. Lane, Esq.
Nevada State Bar No. 8424
R. Calder Huntington, Esq.
Nevada State Bar No. 11996
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Telephone: (775) 327-3000
Facsimile:  (775) 786-6179

*Attorney for Defendant Peri & Sons Farms, Inc.*

1

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 2nd day of January 2014, I served a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** by electronic transmission to the parties on electronic file and listed below:

Jeffrey A. Dickerson, Esq.
9585 Prototype Court, Ste. A
Reno, Nevada 89521
JEFF@GBIS.COM

Attorney for Plaintiff William Herron


/s/ Marcia Filipas
Marcia Filipas

6582916_1

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NEVADA 89511
(775) 327-3000