**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| WILLIAM HERRON,<br>Plaintiff,<br>vs.<br>PERI & SON'S FARMS, INC.,<br>Defendant. | ) | 3:13-cv-00075-HDM-VPC<br><br>ORDER |

Plaintiff William Herron ("plaintiff") has filed a complaint asserting disability discrimination and failure to accommodate against defendant Peri & Son's Farms ("defendant"). Before the court is the defendant's motion for summary judgment on plaintiff's claims (#31). Plaintiff has opposed (#37), and defendant has replied (#38).

**Facts**

On December 5, 2011, plaintiff applied for an open maintenance mechanic position with defendant. (*See* Def. Mot. Summ. J. Ex. 2). In applying for the position, plaintiff submitted a resume representing that he had a Certificate of Completion from the

Arizona Automotive Institute and that he was ASE certified in engine repair, front-end alignment, and air-conditioning. (*Id.*) Plaintiff was interviewed by Paul Giannotta, who would become his supervisor. (*Id.* Ex. 3 (Giannotta Dep. 6)). During the interview process, plaintiff represented that he was a "journeyman mechanic," which meant "he could fix just about everything." (*Id.* at 7).

Plaintiff was hired and began working for defendant on or about December 8, 2011. (*See* Pl. Opp'n Ex. 1). Shortly after, Giannotta began noticing that plaintiff was not as skilled as he had represented himself to be; in his opinion, plaintiff took more time than expected on routine jobs and declined or was unable to do repair work he should have been able to do. (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 7-8, 37, 40-41); *id.* Ex. 4 (Giannotta Decl. 1-2)). For example, Giannotta asserts that plaintiff could not change the oil on a skid steer and would sometimes take all day to complete what was typically a one- to two-hour job. (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 7-8, 37)). In addition, Giannotta claims that plaintiff would repeatedly try to send vehicles to the Chevrolet dealership for costly repairs that Giannotta believed plaintiff should have been able to diagnose and resolve himself. (*Id.* at 40-41; *id.* Ex. 4 (Giannotta Decl. 2)). Finally, Giannotta observed plaintiff making what Giannotta believed to be excessive personal calls during work time.[1] (Def. Mot. Summ. J. Ex. 4 (Giannotta Decl. 2)).

Plaintiff asserts that he was not hired to service skid steers

---

[1] That plaintiff was actually making several personal phone calls during work time appears to be supported by his telephone records. (*See* Def. Mot. Summ. J. 6-8 (citing Exs. 3, 5 & 12)).

and that he was supposed to be trained on them when work was slow. (Pl. Opp'n (Herron Decl. 2); *see also* Def. Mot. Summ. J. Ex. 5 (Herron Dep. 163-64))). He denies that it took him longer than normal to perform work, but does not respond to the assertion that he sent work to the Chevrolet dealership that he should have been able to complete himself. (Pl. Opp'n (Herron Decl. 2)). Finally, plaintiff explains his cell phone use by asserting that he had been told to use his cell phone until the company issued him one, that he used the cell phone to order parts, and that he used his hands-free Bluetooth device to make personal calls so he could continue working. (*Id.*)

In mid-January, Giannotta asked plaintiff to perform some "dash work." (*See* Def. Mot. Summ. J. Ex. 5 (Herron Dep. 48); Pl. Opp'n (Herron Decl. 1)). Plaintiff told Giannotta he could not do the work because of his back. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 60-61); Pl. Opp'n (Herron Decl. 1)). Giannotta said "okay" and did not make plaintiff do the job. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 59-61)).

Two days later, on January 17, 2012, Giannotta terminated plaintiff. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 62)). Plaintiff claims that Giannotta told him he was being laid off because of budget cuts. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 62); Pl. Opp'n (Herron Decl. 2)). Giannotta denies this, saying he told plaintiff he was being "let . . . go because it wasn't working out." (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 15)). Plaintiff concedes that he was subject to a 90-day probationary period. (*Id.* Ex. 5 (Herron Dep. 82)). At the time plaintiff was terminated, he was within the probationary period.

A few weeks later, defendant posted an open mechanic position on Craigslist. (*Id.* Ex. 5 (Herron Dep. 62); *id.* Ex. 14). Plaintiff asserts the advertised position was his position, and that he was replaced by someone who did not have a disability and who did not request an accommodation.

After terminating plaintiff, defendant discovered that his resume contained what it alleges to be several material misrepresentations about his qualifications and work history. First, while the resume stated that plaintiff had a Certificate of Completion from the Arizona Automotive Institute after studying there for a full year (Def. Mot. Summ. J. Ex. 2), plaintiff admits he attended the Institute for only about four months and did not receive any certificate of completion, (*id.* Ex. 5 (Herron Dep. 139). Second, the resume stated plaintiff was ASE certified in engine repair, front-end alignment, and air-conditioning (*id.* Ex. 2), but his engine and front-end certificates had, admittedly, lapsed at the time he submitted his resume.[2] (*See id.* Ex. 6; *id.* Ex. 5 (Herron Dep. 129-31). Third, plaintiff excluded at least one former employer from his resume because he thought the employer would give him a bad reference. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 144-45)). Finally, plaintiff misrepresented the time he spent at some of his prior employers, thereby obscuring periods of unemployment, time spent working for employers plaintiff chose not to list, and time spent owning his own business. (*See id.* at 140-45)).

---

[2] The evidence also strongly suggests that plaintiff did not have and had never had any air-conditioning certificate.

**Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

If the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers"). The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th

Cir.1995)). "[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden-for example by remaining silent-its opportunity is waived and its case wagered." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

**Analysis**

Plaintiff's first amended complaint (#12) asserts two claims under the Americans with Disabilities Act: (1) disability discrimination; and (2) failure to provide a reasonable accommodation.[3] 42 U.S.C. § 12112.

Defendant moves for summary judgment on the following grounds: (1) plaintiff cannot demonstrate he was a qualified individual with a disability; (2) plaintiff cannot show he was terminated because of his disability; (3) plaintiff cannot establish he was denied a reasonable accommodation; and (4) plaintiff failed to exhaust his administrative remedies with respect to his reasonable accommodation claim.

Plaintiff asserts that he was a qualified individual with a disability and that there is an issue of fact as to whether he was terminated because of his disability. He does not in any way oppose summary judgment on his failure to accommodate claim.

I. Disability Discrimination

Under the Americans with Disabilities Act, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the

---

[3] Plaintiff's claim of retaliation was stricken by the court's order dated December 12, 2013 (Doc. #27).

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. The *McDonnell-Douglas* burden shifting framework applies in disability discrimination cases. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). Accordingly, the plaintiff must first establish a prima facie case of discrimination. *See id.* at 1090-93. Once he has done so, the burden shifts to the plaintiff's employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* at 1093. If the employer provides such a reason, the burden shifts back to the plaintiff to show the employer's stated reason is pretextual. *Id.*

A. Prima Facie Case

To establish a prima facie case of disability discrimination, plaintiff must show: (1) he is disabled under the ADA; (2) he is a "qualified individual with a disability"; and (3) he was discriminated against "because of" the disability. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007).

1. Disability

For the purposes of this motion, defendant does not challenge plaintiff's alleged disability. (*See* Def. Mot. Summ. J. 2 n.1).

2. Qualified Individual with Disability

To satisfy this prong, the plaintiff must show "he can perform the job's essential functions either [with or] without a reasonable accommodation." *Bates*, 511 F.3d at 994. The term "qualified" means "that the individual satisfies the requisite skill, experience, education and other job-related requirements of the position" and "with or without reasonable accommodation can perform

the essential functions of such position." 29 C.F.R. § 1630.2(m). "The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision." *Id.* Pt. 1630, App. to § 1630.2(m). The defendant bears the burden of production in establishing which job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

Defendant argues that plaintiff cannot show he was qualified for the position because he did not possess the skill, education, or other job-related requirements of the position. In addition to arguing that plaintiff could not adequately perform the job consistent with its expectations, defendant asserts that plaintiff did not have a "certificate of completion from a certified technical school or equivalent" – a requirement of the job.[4] Because plaintiff did not have the required certificate, defendant argues, he was not qualified for the job. *See Johnson v. Bd. of Trustees of Boundary County School Dist. No. 101*, 666 F.3d 561 (9th Cir. 2011) (recognizing that a teacher whose teaching certificate had lapsed was not qualified for the position she had held because Idaho law required all teachers to have the proper certificate).[5]

There is no disputed issue of fact as to whether plaintiff had a certificate of completion from a certified technical school.

---

[4] While the job posting plaintiff responded to is not on the record, plaintiff testified that the jobs posted by defendant after he was terminated had the "same identical writeup" that he had responded to. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 174-75)). Those jobs required a certificate of completion from a certified technical school or equivalent. (*See id.* Exs. 14 & 20).

[5] Although *Johnson* involved a failure to accommodate claim and not an unlawful termination claim, the definition of "qualified" is the same for both types of claims and thus *Johnson*'s reasoning applies here.

Plaintiff admits he did not. (Def. Mot. Summ. J. Ex. 5 (Herron Dep. 139). Plaintiff suggests he was qualified under the "equivalent" option because he had ASE certificates. However, he presents no evidence to support his counsel's conclusory assertion that his ASE certificates might be equivalent to a certificate of completion from a certified technical school. There is therefore no triable issue of fact as to whether he was qualified under the equivalent option.

Plaintiff appears to argue that because this job requirement was not legally mandated as was the teaching certificate in *Johnson*, it is not relevant in assessing whether he was qualified. However, plaintiff has cited no authority in support of the argument, and nothing in *Johnson* suggests that the teaching certificate requirement was relevant only because it was legally required. Rather, it was relevant because the legal authorization to teach was made a job requirement by the state's Board of Education. Nor does the EEOC Guidance on which *Johnson* relies limit the phrase "job-related requirements" to legally mandated requirements.

3. Discrimination Because of Disability

Defendant also argues that plaintiff cannot show he was terminated because of his disability. Specifically, defendant contends that Giannotta had legitimate reasons for terminating plaintiff, that there is no evidence that he knew plaintiff had a disability, and that plaintiff has no admissible evidence to rebut Giannotta's assertions. While there is substantial evidence to show that plaintiff was not terminated because of his disability, the court does not need to decide this issue.

Because plaintiff has not satisfied all the elements of his prima facie case, summary judgment is therefore appropriate. In addition, even if plaintiff could show that issues of material fact exist on his prima facie case, there are no issues of material fact on whether defendant had a legitimate, nondiscriminatory reason for terminating plaintiff.

B. Legitimate, Nondiscriminatory Reason

Giannotta asserts that he terminated plaintiff based on his poor performance. (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 17-18)). Plaintiff could not perform tasks he was asked to do and that he should have been able to do. Giannotta asserts that plaintiff's back condition played no part in his decision to terminate him. (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 23-24); *id.* Ex. 4 (Giannotta Decl. 10)). Plaintiff asserts that he could and did perform the essential functions of his position and that Giannotta told him he was doing a good job and never counseled him about his performance. (Pl. Opp'n Herron Decl. 2). Giannotta claims he told plaintiff "good job" only on isolated assignments and that overall his performance was not good. (Def. Mot. Summ. J. Ex. 3 (Giannotta Dep. 41-42)). Defendant further argues that its failure to counsel plaintiff to improve his job performance does not demonstrate that he was performing satisfactorily because plaintiff was within the 90-day probationary period and as such defendant was under no obligation to attempt to improve his performance.

Defendant has provided a legitimate, nondiscriminatory reason for plaintiff's termination. In the short time that plaintiff was employed by defendant, he did not perform as required. Plaintiff

provides no evidence to rebut this assertion beyond his conclusory and self-serving declaration. Defendant's reasons for termination are compelling in this case in light of the undisputed evidence that plaintiff's resume, which formed the basis for the decision to hire him, misrepresented his qualifications and work history in several material respects. Accordingly, even if plaintiff's prima facie case had been met, defendant has provided a legitimate, nondiscriminatory reason for its action. The burden is thus on the plaintiff to produce evidence that the stated reason was pretext.

C. Pretext

Pretext may be shown either indirectly, by showing the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or directly, by showing that unlawful discrimination more likely motivated the employer. *Lyons*, 307 F.3d at 1113. Circumstantial evidence must be specific and substantial. *Id.*

Plaintiff appears to argue that pretext is evident from: (1) the close temporal proximity between his claim of disability and his termination; (2) his assertion that Giannotta told him he was being laid off due to budget cuts but within weeks the position had been re-posted; and (3) his replacement by a person without a disability.

Even assuming all of plaintiff's allegations in this regard are true, they do not constitute specific and substantial evidence of pretext in the context of this case. Plaintiff was employed by defendant for less than two months and was still on probation when he was terminated. The close temporal proximity between plaintiff's claimed assertion of disability and his termination is

therefore of limited probative value in this case and is not specific or substantial evidence of pretext. Further, given the essentially undisputed evidence that plaintiff was not performing the tasks as required – and that he made frequent personal calls during work time – defendant had a legitimate, nondiscriminatory reasons for the decision to terminate plaintiff during his probationary period. Again, the legitimacy of defendant's assessment of plaintiff's skills is supported by the undisputed fact that plaintiff misrepresented his qualifications and work history in applying for the position. Plaintiff has failed to present sufficient evidence to create an issue of material fact on the issue of pretext. Accordingly, summary judgment will be granted on plaintiff's claim of disability discrimination.

II. Failure to Accommodate

Under 42 U.S.C. § 12112(b)(5)(A), discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." As with disability discrimination, plaintiff must establish that he was a qualified individual able to perform the essential functions of the position with or without reasonable accommodation. *See Samper*, 675 F.3d at 1237. Because plaintiff has not established he was a qualified individual, his failure to accommodate claim fails. Furthermore, plaintiff essentially concedes in his opposition that summary judgment should be granted when he admits he was given the only accommodation he requested (Pl. Opp'n 4) and does not identify

any other accommodation that was requested and denied. Except under circumstances not present here, an employer is not liable where the employee has not requested a reasonable accommodation. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001). Accordingly, because plaintiff has not established he was a qualified individual and has not identified any failure by defendant to accommodate his alleged disability, summary judgment will be granted on plaintiff's claim of failure to accommodate.[6]

**Conclusion**

The defendant's motion for summary judgment (#31) is **GRANTED.** The clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: This 13th day of May, 2014.

Howard D McKibben

UNITED STATES DISTRICT JUDGE

[6] Because the court grants summary judgment on the merits, it does not reach defendant's argument that plaintiff failed to exhaust this claim.